1  THOMAS E. FRANKOVICH (State Bar No. 074414)
   THOMAS E. FRANKOVICH,
2  *A Professional Law Corporation*
   2806 Van Ness Avenue
3  San Francisco, CA 94109
   Telephone:    415/674-8600
4  Facsimile:    415/674-9900

5  Attorneys for Plaintiffs CRAIG YATES
   and DISABILITY RIGHTS ENFORCEMENT,
6  EDUCATION SERVICES

7
                     UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10 CRAIG YATES, an individual; and            )  **CASE NO. CV 08-0356**
   DISABILITY RIGHTS, ENFORCEMENT,            )
   EDUCATION, SERVICES:HELPING YOU            )  **MEMORANDUM OF POINTS AND**
11 HELP OTHERS, a California public benefit   )  **AUTHORITIES IN OPPOSITION TO**
   corporation,                               )  **MOTION BY UNICORN PAN ASIAN**
12                                            )  **CUISINE**
           Plaintiffs,                        )
13                                            )  Date:     June 6, 2008
   v.                                         )  Time:     8:30 a.m.
14                                            )  Judge:    Hon. Jeffrey S. White
   UNICORN PAN ASIAN CUISINE;                 )  Court:    #2, 17th Floor
15 WELLS FARGO BANK, N.A., (Formerly          )            450 Golden Gate Avenue
   known as CROKET NATIONAL BANK &            )            San Francisco, CA 94012
16 HENRY I. POPPIC, trustees of the POPPIC    )
   TRUST); and CHAMPANGO LLC, a               )
17 limited liability company,                 )
                                              )
18         Defendants                         )
   _____)
19

20
           Plaintiffs Craig Yates and Disability Rights Enforcement, Education Services, submit this
21
   opposition to Unicorn Pan Asian Cuisine's motion to dismiss and to decline supplemental
22
   jurisdiction.
23
   ///
24
   ///
25
   ///
26
   ///
27
   ///
28

**INTRODUCTION**

Unicorn Pan Asian Cuisine (hereinafter referred to as "Unicorn"), as a non-party, has no standing to bring a motion in this matter. Accordingly, its motion should be stricken. Nonetheless, in the event that the Court considers Unicorn's motion, the Court should deny the motion and retain its supplemental jurisdiction insomuch as plaintiffs' action does not raise a complex or novel issue of state law.

**ARGUMENT**

**I. UNICORN IS NOT A PARTY TO THIS ACTION AND, THUS, HAS NO STANDING TO BRING A MOTION UNDER FRCP 12**

Federal Rule of Civil Procedure 12(b) provides that **a party** may raise defenses to a complaint through a responsive pleading. Fed. R. Civ. P. 12(b)(emphasis added). The Rule does not provide for such a motion to be brought by a non-party, nor is there any other legal doctrine or premise which would provide standing for a non-party to bring such a motion.

Unicorn is not a party to this action, and accordingly has no standing to bring the instant motion. As pointed out by Unicorn itself, the initial complaint only presents allegations against "defendants Croket National Bank & Henry I. Poppic, trustees of the Poppic Trust and Chanpango LLC[1]." (Complaint, p. 2:3-5; 4:9-20). Likewise, the complaint's prayers for relief are expressly directed to Croket National Bank & Henry I. Poppic, trustees of the Poppic Trust and Chanpango LLC. (Complaint, Prayers 1-6). To the best of plaintiffs' belief, Unicorn Pan Asian Cuisine is nothing more than the name of the restaurant at issue in this litigation and not a legal entity unto itself. No where in the complaint do plaintiffs refer to Unicorn as a party or a stand alone entity[2]. Rather, the only named defendants are Croket National Bank & Henry I.

---

[1] Plaintiffs subsequently amended the Complaint. The First Amended Complaint names Wells Fargo Bank, N.A., (Formerly known as Croket National Bank & Henry I. Poppic, trustees of the Poppic Trust); and Champango LLC, a limited liability company. (First Amended Complaint, p. 2:3-5).

[2] Plaintiffs also note and inform the Court that there has been no summons issued in the name of Unicorn Pan Asian Cuisine, nor have there been any efforts to serve such a defendant. The only defendants who have been served with the summons and complaint are Champango LLC., (*See*, Court Docket, Entry # 6), and Wells Fargo Bank, N.A. (*See*, Court Docket, Entry #15).

Poppic, trustees of the Poppic Trust and Champango LLC, as the "owners and operators, lessors and/or lessees, or agents of the owners, lessors and/or lessees, of the public accommodation known as the UNICORN." (Complaint, ¶ 8).

Unicorn Pan Asian Cuisine is not a party to plaintiffs' action. It has no standing to bring a motion to dismiss, and its motion should, therefore, be stricken in its entirety.

## II. THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS AGAINST DEFENDANTS

While it is plaintiffs' position that the motion before the Court should be struck in its entirety, in the event that the Court considers the argument urging relinquishment of supplemental jurisdiction, plaintiffs offer the following opposition.

The modern doctrine of supplemental jurisdiction was ushered in with the U.S. Supreme Court's decision in *Mine Workers v. Gibbs*, 383 U.S. 715 (1966). *Gibbs* set the standard for determining whether a federal court has jurisdiction over a state-law claim that is raised in an action which also puts forth a federal question. The *Gibbs* court held that a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal law claims and state law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725.

The *Gibbs* standard was purposefully broad in its jurisdictional authority, intended to counter what the Court saw as the federal courts' "unnecessarily grudging" exercise of pendant jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988). Yet, while *Gibbs* clarified the expansive reach of federal judicial power to hear and decide matters of state law, the decision of whether or not to exercise that power remains discretionary when certain conditions are present. 28 U.S.C. § 1367(c); *Acri v. Varian Assocs.*, 114 F.3d 999, 100 (9th Cir. 1997). The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides specific instances where a declination of the supplemental jurisdiction may be appropriate. 28 U.S.C. § 1367(c). These instances are where:

(1) the claim raises a novel or complex issue of State law,

  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

  (3) the district court has dismissed all claims over which it has original jurisdiction, or

  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Id.*

It should be made clear that where one of the above circumstances is present a Court is not compelled to relinquish its supplemental jurisdiction. Rather, in such a situation the Court simply has the discretion to relinquish jurisdiction, and such discretion should be guided by the general principles of judicial economy, convenience, fairness to the parties and comity. *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557-58 (9th Cir. 1994). Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values," *Carnegie-Mellon*, 484 U.S. at 350, and "given the importance of these values [(economy, convenience, fairness and comity)] in our federal system, the proper administration of justice is far better served by a deliberative decision than by default." *Acri*, 114 F.3d at 1001.

In the present case, plaintiffs' complaint raises both a federal claim and several state law claims, all of which "derive from a common nucleus of operative fact." With the incorporation of the Americans with Disabilities Act ("ADA") into both the Unruh Civil Rights Act, Cal. Civ. Code § 51, and the California Disabled Persons Act, Cal. Civ. Code § 54 and 54.1, the elements of liability and plaintiffs' theory of recovery on their federal and state claims are almost exact mirror images, requiring near identical showings of proof at trial. It is relatively clear and undisputed that, were it not for the commingling of federal and state law causes of action, plaintiffs' claims would be tried in concert through one judicial proceeding. Thus, the only questions which must be reviewed by this Court are (1) whether any of the instances set out in 28 U.S.C. § 1367(c) are present; and if so, then (2) whether or not the exercise of supplemental jurisdiction serves the interests of economy, convenience, fairness and comity.

///

A. **Declination Of Supplemental Jurisdiction For Plaintiffs' State Law Damage Claims Would Be Inconsistent With 28 U.S.C. § 1367(c)**

Of the four instances set out in 28 U.S.C. § 1367(c), Unicorn's motion implicates only the first instance–that plaintiffs' Unruh Civil Rights Act claim raises a novel or complex issue of State law because of the conflict between federal and state case authority regarding the necessity of proving intent. Relying on several cases, including one issued by this Court, which found dismissal of the state law claims appropriate, Unicorn urges this Court to relinquish its supplemental jurisdiction and dismiss plaintiffs' State claims. However, other Courts considering cases with similar facts and issues have likewise found retention of supplemental jurisdiction to be proper. Two such matters are, *Yates v. Belli Deli*, 2007 U.S. Dist. LEXIS 61431 (N.D. Cal. 2007), and *Connally v. Bayport Marina Plaza, LLC.,* USDC N.D. Ca. Case No. C 07-3032 BZ (October 2, 2007). In *Yates*, Judge William Alsup upheld supplemental jurisdiction, stating with regard to defendants' assertion of complexity and predominance that "none of these arguments wins the day." Instead, he found that the plaintiffs' federal and State "claims clearly involve the same facts," and he held that "it would be inefficient to try the claims separately, so the exercise of supplemental jurisdiction is appropriate." Id. at *21. Magistrate Judge Zimmerman, in *Connally*, also upheld supplemental jurisdiction.

Courts in other California Districts have also upheld the propriety of supplemental jurisdiction in disability access cases. For instance, in *Chavez v. Suzuki*, 2005 U.S. Dist. LEXIS 40092 (S.D. Cal. 2005), the Court noted:

> Although the Unruh Act and DPA [(Disabled Persons Act)] claims may implicate issues that remain to be resolved under state law–most notably, how to determine "each offense" for purposes of damages–the Court does not find that these issues are of such complexity or centrality that the Court must surrender jurisdiction. Furthermore, the mere fact that the state claims allow for the recovery of monetary damages, whereas the ADA provides for injunctive relief only, does not compel the conclusion that the state claims "substantially predominate" over the federal claim. Other than the availability of statutory damages under state law, the state and federal claims are identical. The burdens of proof and standards of liability are the same. Indeed, the Unruh Act and DPA specifically provide that a violation under the ADA also constitutes a violation of the Unruh Act and DPA. Id. at *5-6.

In another case, *Johnson v. Barlow*, 2007 U.S. Dist. LEXIS 44855 (E.D. Cal. 2007), Judge William B. Shubb affirmed his exercise of supplemental jurisdiction in a case with comparable

facts to those presented here. In addressing the defendant's predominance assertion, Judge Shubb astutely noted that, "plaintiff's state law claims for damages are undoubtedly a driving force behind the action. But to rule as defendants propose would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act." *Id*. at *13.

However, and perhaps most importantly, the issue which Unicorn raises as justification for the Court's dismissal–the split between federal and state case authority on the intent requirements for recovery under the Unruh Civil Rights Act–has recently been certified for presentation to the California Supreme Court. *See*, *Munson v. Del Taco, Inc.*, Order Certifying Questions to Supreme Court of California, USCA 9 Case No. 06-56208 (April 14, 2008). Thus, this Court will soon have the guidance it needs to properly interpret and apply the Unruh Civil Rights Act to the facts of this case. With such guidance soon forthcoming, Unicorn's argument that supplemental jurisdiction should be denied and plaintiffs' state law causes of action dismissed loses its validity under 28 U.S.C. § 1367(c).

**B.    An Exercise Of The Court's Supplemental Jurisdiction Is Supported By The Principles Of Judicial Economy, Convenience, Fairness To The Parties And Comity**

Assuming arguendo that the Court were to determine that, despite the certification of the subject legal questions to the California Supreme Court, it is within its discretion to decline supplemental jurisdiction based on 28 U.S.C. § 1367(c), the principles of judicial economy, convenience, fairness to the parties and comity would overwhelmingly call for the court to retain rather than relinquish jurisdiction. The very purpose of supplemental jurisdiction is to avoid parties having to litigate multiple actions in differing venues for claims arising from a single "case or controversy." Yet, this is exactly what would occur if the Court were to decline jurisdiction over plaintiffs' State law claims. While plaintiffs' federal injunctive relief claim would continue in this Court, a second action would have to be filed and litigated in state court in order to resolve plaintiffs' state law claims. The parties would be forced to conduct two judicial proceedings instead of just one, incurring duplicative costs and fees, and burdening not just one Court but two with their action. The legal issues raised and the additional burden

1 imposed on federal judicial resources, if any, if the Court retains jurisdiction pales in comparison
2 to the expected time and expense that will be borne by the parties and the state court if this Court
3 declines to retain jurisdiction. Thus, the only way to truly serve the interests of judicial economy
4 is to retain jurisdiction.

5 Further, it is plaintiffs' experience and almost certainly the experience of the Court that
6 once the injunctive relief aspects of plaintiffs' action are addressed and resolved, plaintiffs'
7 monetary claims quickly follow suit. This Court, unlike its brethren District Courts, has adopted
8 and implemented a remarkably effective procedure for disposition of ADA access cases–a
9 procedure which has a near universal settlement rate. The effective and efficient manner in
10 which this Court directs ADA litigation toward resolution promises, with a high rate of
11 probability, that plaintiffs' claims will be resolved in their entirety quickly and with the least
12 imposition on judicial resources. Clearly, this would not be the case if supplemental jurisdiction
13 is declined and/or relinquished.

## CONCLUSION

For the foregoing reasons, the Court should strike and/or deny Unicorn's motion.

Dated: April 15, 2008                    THOMAS E. FRANKOVICH
                                         *A PROFESSIONAL LAW CORPORATION*


                                         By:  /s/
                                              Thomas E. Frankovich
                                         Attorneys for Plaintiffs CRAIG YATES and
                                         DISABILITY RIGHTS ENFORCEMENT,
                                         EDUCATION SERVICES